**Evan A. Schmutz (3860)**
  *eschmutz@djplaw.com*
**Jordan K. Cameron (12051)**
  *jcameron@djplaw.com*
**DURHAM JONES & PINEGAR, P.C.**
3301 N Thanksgiving Way, Suite 400
Lehi, Utah 84043
Telephone: (801) 375-6600
Fax: (801) 375-3865

**Attorneys for Plaintiff XMission, L.C.**

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah company,<br><br>Plaintiff,<br><br>vs.<br><br>ADKNOWLEDGE, INC. a Missouri Corporation; DOES 1-40,<br><br>Defendants. | **COMPLAINT**<br><br>**(JURY DEMAND)**<br><br>Case No.:  2:15cv00277 TC<br><br>Judge Tena Campbell |

COMES NOW Plaintiff XMission, L.C. ("XMission"), and complains and alleges the following:

PARTIES, JURISDICTION AND VENUE

1. Plaintiff XMission is a Utah limited liability company with its principal place of business in Salt Lake City, Utah, and at all relevant times hereto was duly registered and licensed to do business in the State of Utah.

2. Defendant Adknowledge, Inc. is a Missouri corporation.

3. On information and belief DOES 1-40 are individuals and companies doing business in association with the above named-defendant, either as shareholders, officers, members, affiliates and/or publishers, some or all or all of whom are alter egos of the named Defendants.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), for violations of the 15 U.S.C. §7701 *et seq.* (CAN-SPAM Act of 2003), and pursuant to 15 U.S.C. § 7706(g)(1) (original jurisdiction) for cases involving a civil action by an internet access service adversely affected by a violation of 15 U.S.C. §7704(a)(1), 15 U.S.C. §7704(b), or 15 U.S.C. § 7704(d), or a pattern and practice that violates subparagraphs (2), (3), (4), and/or (5) of 15 U.S.C. § 7704(a).

5. This Court has personal jurisdiction over the Defendants because the Defendants, and each of them, are residents of the state of Utah, are businesses organized and existing under the laws of the state of Utah, and/or because Defendants have purposefully availed themselves of the privileges of conducting commercial activity in the forum state, in part, through the sending of thousands of commercial e-mails in to the state, and the exercise of jurisdiction is reasonable since Defendants should have known that they would be subject to the jurisdiction and laws of the forum state when they sent, or caused the commercial e-mails to be sent to customers of an e-mail service provider located in Utah.

6. Venue is proper pursuant to 18 U.S.C. §1391, as a substantial part of the unlawful actions by the Defendants, and each of them, occurred in this judicial district.

## GENERAL ALLEGATIONS

7. XMission was founded in 1993 as Utah's first Internet Service Provider ("ISP").

8. From its early days as a private, Utah ISP, to its current role as a global business Internet provider, XMission has expanded its technical offerings to include sophisticated cloud hosting, web hosting, e-mail service and hosting, collaboration tools, business VoIP phone service, and high speed internet connectivity solutions including optical Ethernet, copper and fiber.

9. Throughout its history, XMission has also worked with hundreds of Utah's nonprofit organizations by providing free web hosting services, and by sponsoring a variety of community-based events and facilities.

10. XMission is a widely known and well-recognized ISP in Utah.

11. XMission owns all the servers, routers, and switches on its network through which it hosts and provides its Internet access services for its customers.

12. XMission has an expansive network and infrastructure, which it has had to consistently update, upgrade and augment in order to combat ongoing SPAM problems.

13. XMission is the sole owner of all its hardware, and has complete and uninhibited access to, and sole physical control over, the hardware.

14. As a legitimate and leading ISP, XMission is a bona fide Internet Access Service ("IAS") as that term defined under 15 U.S.C. §7702(11), 47 U.S.C. §231(e)(4).

15. XMission provides Internet access services to both commercial and residential customers.

16. The e-mail accounts hosted and served by XMission include e-mail accounts owned by third-party customers of XMission, e-mail accounts owned by employees and/or customers of XMission's third-party customers, e-mail account owned by employees of XMission, and also e-mail accounts owned by XMission itself.

17. SPAM is defined as commercial electronic mail messages (e-mail).

18. From early January, 2015 through mid April, 2015, XMission received approximately 61,391 SPAM e-mails, sent and/or initiated by the Defendants collectively, which independently and collectively adversely affected XMission, and which independently and collectively contributed to an overall SPAM problem.

19. On information and belief, none of the owners of the e-mail addresses gave their affirmative consent, as it is defined in 15 U.S.C. § 7702(1) to receive commercial e-mails from the Defendants and/or about the Defendants' products, services, or websites.

20. On information and belief, Adknowledge is an "initiator" of the e-mail messages as it either transmitted or procured the transmission of the e-mails in question as such term is defined in 15 U.S.C. § 7702 and 7706(g)(2).

21. Adknowledge either directly transmitted, or caused the transmission of, each of the 61,391 SPAM e-mails at issue in this Complaint during the time period in question.

22. Approximately 43,397 of the SPAM e-mails were transmitted directly by, or at the direction of, Adknowledge during a seven day period in January 2015 as part of a mass commercial SPAM campaign.

23. The e-mails appear to be continuing as of the date of this Complaint.

24. On information and belief, various of the DOES 1-40, are "Initiators" and/or "Senders" of the e-mails collectively, as each of them, in some way, benefitted from the advertising in the messages and/or initiated or procured the e-mails in question, and who have initiated or sent the e-mails with the knowledge and/or active participation of Defendant.

25. Each of the e-mails is a commercial message and contains commercial content.

26. The e-mails, and each of them, were received by XMission on its mail servers located in Utah.

27. Throughout its business, XMission has expended well in excess of $3,000,000 in hardware acquisition, maintenance and related expenses to increase capacity to deal with increased SPAM and related harm, SPAM filtering expenses, and employee time in dealing with problems caused by its receipt of SPAM generally.

28. XMission expends approximately $100,000 to $200,000 per year in dealing with SPAM related issues and associated employee time, exclusive of attorney fees.

29. The harm XMission continues to suffer, as the result of its collective SPAM problem, is much more significant than the mere annoyance of having to deal with SPAM or the process of dealing with SPAM in the ordinary course of business (i.e., installing a spam filter to flag and discard spam).

30. The harm XMission suffered, and continues to suffer, is manifested in financial expense and burden significant to an ISP; lost employee time; lost profitability; the necessity to purchase and dedicate equipment specifically to process SPAM that could otherwise be dedicated providing internet access services; harm to reputation; and customer and e-mail

SLC_2153089

recipient complaints, including 5,832 Adknowledge e-mails that XMission customers complained of by manually reporting the e-mails as SPAM.

31. Each of the SPAM e-mails in question is part of the same commercial marketing campaigns that resulted in the 5,832 customer SPAM reports identified above.

32. Each of the e-mails in question violates multiple CAN-SPAM provisions.

33. The majority of the SPAM e-mails received by XMission, including the e-mails in question, violate the CAN-SPAM Act in one or more ways, and contributed to a larger SPAM problem.

FIRST CAUSE OF ACTION
**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)**

34. Each of the previous paragraphs is realleged herein.

35. The CAN-SPAM Act makes it unlawful to send e-mail messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. § 7704(a)(1).

36. It is a violation of 15 U.S.C. § 7701(a)(1) when Header Information includes: illegitimate or fake sender e-mail accounts, sender e-mail addresses, sender domains, sender IP addresses, and/or sender computer names; header information that is registered to unrelated third parties; altered or concealed header information that impairs the ability of a party processing the message to identify or respond to the transmitting party; IP addresses generated by a proxy server for purposes of disguising the origin of the email; "From" lines that do not accurately identify the Sender of the message.

SLC_2153089

37. It is also a violation of 15 U.S.C. § 7701(a)(1), when an e-mail contains a generic "from" name and is sent from a privacy-protected domain name, such that the recipient cannot identify the sender from the "from" name or the publicly available WHOIS information.

38. Approximately 15,361 of the e-mails in question violate 15 U.S.C § 7704(a)(1) in that the Header Information contained sender IP addresses that either do not belong to the identified sender domain, were not recognized by a legitimate Domain Name Service as belonging to the identified sender domain, and/or do not identify the actual source of the e-mail.

39. Approximately 15,459 of the e-mails in question violate 15 U.S.C § 7704(a)(1) in that they contain generic from names and originated from privacy-protected sender domains.

40. Approximately 338 e-mails in question violate 15 U.S.C § 7704(a)(1) in that the "from" name identifies, as least in part, the intended recipient as the sender of the e-mail. This is inherently false and materially misleading.

41. Accordingly, XMission prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1) pursuant to 15 U.S.C. § 7706(g)(3).

## SECOND CAUSE OF ACTION
**CAN-SPAM ACT, 15 U.S.C. § 7704(a)(1)(A)**

42. Each of the previous paragraphs is realleged herein.

43. The CAN-SPAM Act makes it unlawful to send e-mail messages that contain, or are accompanied by, materially false or materially misleading Header Information. 15 U.S.C. §7704(a)(1).

44. "Header information that is technically accurate but includes an originating electronic mail address, domain name, or Internet Protocol address the access to which for

7

purposes of initiating the message was obtained by means of false or fraudulent pretenses or representations shall be considered materially misleading." 15 U.S.C. § 7704(a)(1)(A).

45.     An e-mail that originated from a sender domain registered with an ICANN compliant domain registrar who maintains an anti-spam policy, violates the law regardless of whether the e-mail contains a header that is technically accurate.

46.     In order to obtain the domain names used to send the e-mails in question, the domain registrants represented to the domain registrars that the domain names would not be used for SPAM purposes.

47.     The Defendants intended that the domain names were to be used, and the domain names were used, for SPAM purposes.

48.     The sender domains were obtained under false and fraudulent pretenses for use in Defendant's e-mail marketing campaigns in violation of §7704(a)(1)(A).

49.     Approximately 60,261 of the e-mails in question originated from sender domains registered with an ICANN compliant domain registrar who maintains an anti-spam policy. Specifically:

    a. e-mails were sent from sender domains registered with 1&1 Internet AG, BigRock Solutions, Ltd., Crazy Domains FZ-LLC, DomainSite, Inc., eName Technology Co., Ltd., eNom, Inc., GoDaddy.com, Internet.bs Corp., Key-Systems GmBh., MarkMonitor Inc., Moniker, Name.com, Inc., NameBright.com, NameCheap, Inc., Network Solutions, LLC, PDR Ltd. d/b/a PublicDomainRegistry.com, Register.com, Tucows Domains, Inc.

50. Each of the 60,261 e-mails identified above violates §7704(a)(1)(A) as set forth herein.

51. Accordingly, XMission prays for relief in the amount of $100 per violation of 15 U.S.C § 7704(a)(1) pursuant to 15 U.S.C. § 7706(g)(3).

THIRD CAUSE OF ACTION
**Aggravated Damages – CAN-SPAM Act 15 U.S.C §7706(g)(3)(C)**

52. Each of the previous paragraphs is realleged herein.

53. On information and belief, each of the Defendants committed the violations set forth above willfully and knowingly; or, in the alternative, each of the Defendant's unlawful activity included one or more of the aggravated violations set forth in 15 U.S.C. § 7704(b).

54. Specifically, on information and belief, each of the Defendants engaged in dictionary attacks, used scripts or other automated means to created sender and recipient e-mail addresses, and engaged in relaying and retransmitting in violation of 15 U.S.C. §7704(b)(1), (2), and/or (3).

55. As an example of the evidence of use of scripts to generate sender domains, Defendants transmitted e-mails to XMission customers through the following domains: 00261.net; 00374.net; 00596.net; 00689.net; 001268.net; 048588.com; 0959.org; 17000666666.com; 1700099999.com; 323333.net; 366666666.com; 466666666.com; 888338.net.

56. Accordingly, XMission prays for treble damages of the total damage amount determined by this Court.

REQUEST FOR RELIEF

Plaintiff respectfully requests the following relief:

9

A. Entry of judgment in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1).

B. Entry of judgment in the amount of $100 per violation of 15 U.S.C. § 7704(a)(1)(A).

C. Treble damages pursuant to 15 U.S.C. § 7706(g)(3).

D. Attorneys' fees and costs pursuant to 15 U.S.C. § 7706(g)(4).

E. Pre and post-judgment interest at the highest rate permitted by law.

F. Entry of permanent injunction against each Defendant prohibiting each Defendant from sending or causing to be sent e-mail message to XMission and its customers.

G. All other relief deemed just in law or equity by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable of right in this action, pursuant to Rule 38(b), Federal Rules of Civil Procedure.

DATED this 20th day of April, 2015.

DURHAM, JONES & PINEGAR, P.C.

/s/ Jordan K. Cameron
Evan A. Schmutz
Jordan K. Cameron
*Attorneys for Plaintiff*

Plaintiff's Address:
51 East 400 South
Suite 200
Salt Lake City, Utah 84111