Jill L. Dunyon (5948)
Maralyn M. English (8468)
SNOW, CHRISTENSEN & MARTINEAU
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
(801) 521-9000
jld@scmlaw.com

Derek A. Newman (Pro Hac Vice)
Jason E. Bernstein (Pro Hac Vice)
NEWMAN DU WORS
2101 Fourth Avenue,
Suite 1500
Seattle, WA 98121
(206) 274-2800
dn@newmanlaw.com

Attorneys for Adknowledge, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C.,<br><br>    Plaintiff,<br><br>v.<br><br>ADKNOWLEDGE, INC., *et al*.<br><br>    Defendants. | Case No. 2:15-CV-277 TC DBP<br><br>**DEFENDANT ADKNOWLEDGE, INC.'S RULE 56(d) MOTION, MEMORANDUM IN SUPPORT, AND REQUEST FOR AN EXPEDITED HEARING**<br><br>Judge Tena Campbell |

Defendant Adknowledge, Inc. ("Adknowledge") moves under Federal Rule of Civil Procedure 56(d) for the Court to deny the motion of XMission, L.C. ("XMission") for partial

summary judgment, without prejudice, so the parties can complete discovery. Adknowledge also requests an expedited hearing on this motion.

## I.     PRECISE RELIEF SOUGHT

Adknowledge respectfully requests:

- An order denying or deferring consideration of XMission's motion for partial summary judgment (Dkt. 53) until the discovery period closes;
- Alternatively, a reasonable time to obtain declarations or to take discovery, which should be until discovery closes and no less than 45 days from when the Court issues an order on this motion; and
- An expedited hearing on this motion so that the parties do not have to expend resources preparing opposition and reply briefs while this motion is pending.

## II.     INTRODUCTION

XMission moved for partial summary judgment toward the beginning of this complex case, asking the Court to find that 32,111 emails violate the CAN-SPAM Act and award it a $20 million windfall. Yet XMission reserves its right to move for summary judgment on an additional 70,000 emails—and using XMission's math will seek another $50 million later.

Discovery closes in October 2016. Dispositive motions are not due until November 2016. So far, neither party has conducted a single deposition. Adknowledge has not had sufficient time to conduct discovery and review each of the 32,111 emails. Thus, it does not have the information or evidence necessary to properly respond to XMission's partial summary-judgment motion. Moreover, Adknowledge will certainly file its own summary-judgment motion after discovery closes.

The Court should allow Adknowledge time to conduct discovery and respond to XMission's partial summary judgment motion when discovery is complete. Adknowledge

requests that the Court not decide piecemeal summary-judgment motions throughout this case, but hear all summary-judgment motions together at one time.

Adknowledge respectfully requests that the Court deny XMission's motion without prejudice under Federal Rule of Civil Procedure 56(d) as premature. If the Court is inclined to decide XMission's partial summary-judgment motion now, Adknowledge requests at least 45 additional days to respond—beginning when the Court issues its order on this motion.

### III. FACTS

1. XMission filed this lawsuit against Adknowledge alleging violations of the CAN-SPAM Act, 15 U.S.C. §§ 7704(a)(1), 7704(a)(1)(A), 7706(g)(3)(C). Specifically, XMission claims that Adknowledge is a "procurer" of about 110,000 emails. (Decl. of Jason E. Bernstein ("Bernstein Decl."), ¶ 2 filed concurrently herewith.) XMission seeks tens of millions of dollars even though it has not shown any real harm from the emails at issue.

2. On November 2, 2015, XMission moved to extend deadlines in the Scheduling Order in an effort "to facilitate a complete discovery in this case." (Dkt. 36 at 17.) Adknowledge did not object because this case is complex, and both parties have substantial discovery to do.

3. On January 7, 2016, the parties stipulated to extend the deadlines under the Scheduling Order—which the Court entered as an order. (Dkt. 47.) Under the revised schedule, the close of fact discovery is on September 5, 2016; the last day for expert discovery is on October 5, 2016; and the deadline for filing dispositive motions is on November 5, 2016—eight months away. (Dkt. 45.)

4. On March 14, 2016, XMission moved for partial summary judgment. (Dkt. 53.) XMission seeks an order finding that Adknowledge initiated 32,111 emails that allegedly contained materially false and misleading header information in violation of the CAN-SPAM Act. (Dkt. 53 at 2.)

5. XMission seeks to recover the maximum penalty for each of the 32,111 emails for a total damage award of about $20 million, in addition to attorney's fees and costs. (Dkt. 53 at 47.)

6. XMission's motion asks the Court to make several factual findings as well as findings on mixed questions of fact and law, including:

- That XMission is a bona fide Internet access service;
- That XMission suffered sufficient harm to confer standing;
- That Adknowledge is an "initiator" for each of the 32,111 emails and a "sender" for 93.5% of those emails;
- That each of the 32,111 emails violated the CAN-SPAM Act; and
- That XMission should be awarded the maximum statutory damages and that those damages should be trebled. (*Id.* at 46–47.)

7. Each of these assertions requires significant factual investigation. XMission asserts that it is a bona fide Internet access service and suffered harm. Its employees submitted declarations about XMission's operations, including detailed claims of the expenses XMission incurred to purchase computer servers and other equipment. (Dkt. 54, ¶¶ 18–19.) Adknowledge requested written discovery from XMission relating to these allegations, but received only a partial response. (Bernstein Decl., ¶ 3.) XMission never disclosed much of the information provided in support of partial summary judgment until it filed that motion. (Bernstein Decl., ¶ 4.) So Adknowledge was unable to conduct additional discovery or prepare for depositions on those issues. (Bernstein Decl., ¶ 5.)

8. On March 9, 2016—before XMission filed its summary-judgment motion—Adknowledge sent a letter to XMission identifying several deficiencies in XMission's discovery responses, to which XMission still has not substantively responded. (Bernstein Decl., ¶ 6.) After Adknowledge receives the documents responsive to its discovery requests, Adknowledge must—among other things—depose the relevant witnesses and investigate each of XMission's claims

4

relating to additional server capacity and other equipment purchases that XMission claims were made to combat spam emails. (Bernstein Decl., ¶ 7.) Adknowledge may retain an expert on whether these expenses were actually necessary to combat spam—and whether they were so effective that XMission doesn't actually have the spam problem it claims to have. (Bernstein Decl., ¶ 8.)

9.  XMission also claims that Adknowledge was the "initiator" or "sender" of each email. (Dkt. 2 at 4.) But XMission admits that third parties actually sent the emails, and alleges they made false representations in order to obtain domain names. (*Id.* at 5; *see also* Dkt. 4 at 12; Dkt. 53 at 42.) Adknowledge must investigate this claim by interviewing and/or deposing the third-party senders and domain-name providers. (Bernstein Decl., ¶ 9.)

10.  In its summary-judgment motion—for the first time—XMission identifies 32,111 emails allegedly containing false "friendly from" and "from" information in the header line. To respond to that claim, Adknowledge must independently evaluate each of the 32,111 emails or at least a sample. (Bernstein Decl., ¶ 10.) After analyzing the emails, Adknowledge must investigate whether and how any header lines contained false information. (Bernstein Decl., ¶ 11.) Since Adknowledge did not send the emails, it is not responsible for the headers. Adknowledge must interview or depose any witnesses responsible for the headers. (Bernstein Decl., ¶ 12.)

11.  XMission also claims the senders—third parties known as "publishers"—gave false addresses when the publishers signed up for domain names. (Dkt. 53 at 43.) In order to verify this claim, Adknowledge must obtain the WHOIS information for each domain used to send the 32,111 addresses and verify the address information for each one. (Bernstein Decl., ¶ 13.)

12.  Adknowledge has diligently pursued discovery. (Bernstein Decl., ¶ 14.) Adknowledge could not undertake the substantial effort to review each of these 32,111 emails before XMission moved for partial summary judgment because XMission refused to identify

5

which legal theory applied to which of the over 100,000 emails at issue. (Bernstein Decl., ¶ 15.) Until XMission filed its partial summary-judgment motion, Adknowledge had no means of knowing what to look for in each email.

   13. XMission admits that if Adknowledge did not know and did not consciously avoid knowing that one of its publishers engaged in a pattern or practice of violating CAN-SPAM, Adknowledge has a complete defense and is not liable. (Dkt. 53 at 32–33.) Adknowledge intends to retain experts to opine as to the commercial reasonableness of Adknowledge's anti-spam policies, which are designed to ensure compliance with federal and state spam laws. (Bernstein Decl., ¶ 16.) Adknowledge may also obtain testimony from technical and policy experts in the online marketing industry. (Bernstein Decl., ¶ 17.) It is anticipated that they would testify that Adknowledge's compliance practices are the best in the industry, that Adknowledge could not have done better, and that based on those compliance practices Adknowledge did not know and did not consciously avoid knowing that its publishers engaged in a pattern or practice of violating CAN-SPAM. (Bernstein Decl., ¶ 18.)

## IV. ARGUMENT

   Federal Rule of Civil Procedure 56(d) prevents a nonmoving party from being "railroaded" into summary judgment by a premature motion. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)[1]. The general principal of Rule 56(d) is that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5; *see Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1521 (10th Cir. 1992).

   When faced with a premature motion, the nonmoving party may show "by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition."

---

[1] In 2010, the Federal Rules of Civil Procedure Changed. Fed. R. Civ. P. 56(d) carries forward without substantial change the provisions of former subdivision (f). Pre-2010 cases discussing Rule 56(f) apply to the current Rule 56(d).

Fed. R. Civ. P. 56(d). The court may then: "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id.* Unless dilatory or lacking in merit, the court should liberally treat a party's rule 56(d) application. *See Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1555-54 (10th Cir. 1993). The Court should decide a Rule 56(d) request before deciding summary judgment. *See Wilson v. Vill. Of Los Lunas*, 572 F. App'x 635, 639 (10th Cir. 2014) (citing Moore's Federal Practice, § 56.101[4] (Matthew Bender 3d Ed.)).

**A.   Adknowledge may stipulate to standing but must conduct discovery to verify XMission's allegations.**

The CAN-SPAM Act creates a private right of action only for "bona fide internet access services." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1050 (9th Cir. 2009). Standing to file suit under CAN-SPAM requires the plaintiff to show both (1) that it is an "internet access service" provider, and (2) that it was "adversely affected by" statutory violations. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F. Supp. 2d 1025, 1030 (N.D. Cal. 2012).

Using declarations from its employees, XMission alleges that it is an internet access service provider and has had to consistently update, upgrade, and augment its infrastructure to combat ongoing unsolicited commercial email. (Dkt. 54, ¶ 13.) Courts recognize the "ISP-type harms" necessary for standing to include the costs of: (1) investing in new equipment to increase capacity, (2) customer service personnel to address customer complaints, and (3) increased bandwidth, network crashes, and maintenance of anti-spam and filtering technologies. *Id.* at 1030–31. An internet access service can establish standing under CAN-SPAM by providing evidence of "some combination of operational or technical impairments and related financial costs attributable to unwanted commercial email." *Id.* at 1031.

XMission claims to have spent in excess of $3 million fighting spam during the course of its 23 years in business. (Dkt. 54, ¶¶ 3–4, 18.) XMission claims that, on average, battling spam costs it $100,000 to $200,000 each year. (Dkt. 54, ¶ 19.) Therefore, XMission complains, it

7

suffers harm beyond the mere annoyance of having to deal with spam in the ordinary course of business. (Dkt. 53 at 28–29.) Adknowledge must investigate whether XMission's expenses are sufficient to confer standing or are only the "negligible burdens routinely borne by IAS providers" that do not give rise to standing under CAN-SPAM. *Gordon*, 575 F.3d at 1054. In order to do this, Adknowledge must obtain and review documents from XMission, retain an expert, and depose XMission's witnesses. Once this investigation is complete, Adknowledge may or may not agree that XMission met its burden of proving harm. Adknowledge is entitled to investigate, and the Court should not simply take XMission at its word—and rule on a dispositive motion—before allowing discovery to proceed.

**B.    Adknowledge must evaluate each email, the WHOIS information, and the accuracy of addresses provided.**

In its motion for partial summary judgment, XMission contends that 32,111 emails violate the CAN-SPAM Act because they contain materially false or misleading header information. Header information is only materially false or misleading if "alteration or concealment of header information" would impair the ability of a recipient "to identify, locate, or respond to a person who initiated the electronic mail message." 15 U.S.C. § 7704(a)(6). Even if header information is false, no CAN-SPAM violation occurs when the body of the email contains sufficient identifying information to locate the sender. *See Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 357 (4th Cir. 2006).

XMission argues the header information in the 32,111 emails is materially false and misleading because the From-names are generic and the accompanying WHOIS information is inaccurate. (Motion at 39-40.) This is a question of fact which necessitates discovery. Adknowledge must investigate whether this is true, and whether each email contains sufficient identifying information to locate the sender even if the header information is false.

If recipients are able to identify the sender, the header information is not materially false and misleading. *See Mummagraphics*, 496 F.3d at 357 (the alleged inaccuracies in the headers

8

were not material because the emails included "chock full of methods to 'identify, locate, or respond to' the sender.") XMission alleges that the header information is false because it doesn't contain the sender's name. But XMission ignores whether this was material. See 15 U.S.C. § 7704(a)(6). Adknowledge should have the opportunity and time to review the emails to determine whether a sender's identity is ascertainable from the body of the emails.

C. **Adknowledge needs to conduct expert discovery to demonstrate that it did not procure the emails at issue.**

The CAN-SPAM Act prohibits initiating an email that contains materially false or misleading header information. See 15 U.S.C. § 7704(a)(1). The term "initiate" means to originate or transmit an email, or to procure email origination or transmission. Id. § 7702(9). The word "procure" means "intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf." Id. § 7702(12). The procurer must have acted "with actual knowledge, or by consciously avoiding knowing, whether such person is engaging, or will engage, in a pattern or practice that violates this chapter" in order to be liable. Id. § 7706(g)(2).

In its motion for partial summary judgment, XMission argues that Adknowledge procured the emails at issue because it purposefully remained ignorant of publishers' practices by not approving or reviewing the final email a publisher sends. (Motion at 33-34.) Adknowledge intends to retain an expert to show that its robust compliance policies sufficiently prevent the sending of unsolicited commercial email. (*See* Bernstein Decl., ¶¶ 17–18.) Expert testimony will demonstrate that Adknowledge has established and implemented commercially reasonable procedures designed to ensure that publishers follow the law. If given the opportunity to engage in fact and expert discovery, Adknowledge intends to present facts and expert opinion demonstrating that it did not consciously avoid knowing whether or not its publishers violated the CAN-SPAM Act and thus is not a procurer.

Adknowledge may also retain an expert to survey potential recipients of commercial emails to measure materiality. (Bernstein Decl., ¶ 19.) If the emails do not contain material inaccuracies, neither Adknowledge nor the actual senders are liable under CAN-SPAM. Adknowledge should be allowed discovery to conduct this investigation.

**D.   Adknowledge must conduct discovery to present material facts to oppose XMission's claim to recover the statutory maximum penalty.**

XMission has elected to recover statutory damages in lieu of actual damages. For each of the 32,111 emails, XMission requests the maximum penalty of $100 per violation of 15 U.S.C. § 7704(a)(1) and $100 per violation of 15 U.S.C. § 7704(a)(1)(A) for a total base damage award of $6,422,200 and total damages of $20 million. (Dkt. 53 at 46.)

The Court has wide discretion in determining the amount of statutory damages between the statutory maxima and minima. *Facebook, Inc. v. Wallace*, 2009 WL 3617789, at *2 (N.D.. Cal. Oct. 29, 2009 (citing *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir.2001)). But statutory-damage awards are limited by due process rights. *See Wallace*, 2009 WL3617789, at *2 (citing *United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir.1992)). A statutory-damages award may violate the due process rights of a defendant "where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *Wallace*, 2009 WL3617789, at *2 (citing *United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir.1992)).

Although statutory damages include a deterrent element, the Court should still look to estimates of actual damages. *See Tagged, Inc. v. Does 1 through 10*, 2010 WL 370331, at *11 (N.D. Cal. Jan. 25, 2010). Adknowledge should be allowed to develop and present evidence about whether the damages sought would compensate XMission—or whether the damages sought constitute a money grab. XMission claims that it incurred $3 million since it began business many years ago to combat spam from all sources. Yet it seeks $20 million from Adknowledge alone, and reserves the right to requests tens of millions of dollars more. In truth,

XMission may not have even incurred $3 million in costs relating to spam. But Adknowledge cannot present this evidence without XMission's financial documents and testimony. The Court should allow Adknowledge to obtain that evidence before opposing summary judgment.

At this stage of the litigation, the record is not yet developed to determine liability—let alone damages. Assuming a violation of the CAN-SPAM Act exists, the damage award should be proportionate to XMission's actual loss. XMission is not entitled to a windfall.

Additionally, the Court may reduce the amount of statutory damages if it finds a violation occurred despite the violator's reasonable efforts to comply with previously implemented practices and procedures. 15 U.S.C. § 7706(g)(3)(D). Adknowledge has robust procedures designed to prevent violations of the CAN-SPAM Act. (Declaration of John Herbst, Dkt. 14 ("Herbst Decl."), ¶ 4–7.) Adknowledge has a full-time staff of several employees monitoring publishers on an ongoing basis to ensure they remain compliant with state and federal laws and regulations. (Herbst Decl., ¶ 4.) Publishers failing to comply with Adknowledge's requirements may not continue the privilege of advertising for Adknowledge's marketing network. (Herbst Decl., ¶ 19.)

Testimony from a qualified expert will demonstrate that Adknowledge's compliance policies are the best in the industry, and constitute diligent efforts sufficient to ensure Adknowledge did not know or consciously avoid knowing that its publishers engaged in a pattern or practice of violating CAN-SPAM. (*See* Bernstein Decl., ¶ 18.) If that testimony does not provide a complete defense, it should reduce the statutory damage award if the Court finds a CAN-SPAM violation. The Court should not allow a motion seeking a $20 million penalty without affording Adknowledge the right to locate the appropriate expert witness, conduct discovery, and provide expert testimony about the statutory damages sought.

E.  **Judicial economy is served by deferring consideration of XMission's motion for partial summary judgment because the Court can hear one round of summary-judgment motions instead of two or more.**

Deferring consideration of XMission's partial summary judgment would serve judicial economy. Adknowledge will file a summary-judgment motion once it completes discovery—by November 5, 2016 according to the Court's scheduling order (Dkt. 47.). For example, in the complaint XMission contends that about 60,000 of the emails at issue violate the CAN-SPAM Act because the sender domains are registered with a domain registrar who maintains an anti-spam policy. (Complaint ¶ 49.) Adknowledge intends to conduct third-party discovery to determine the scope of these registrars' anti-spam policies. (Bernstein Decl., ¶ 20.) This third party discovery is necessary to determine whether or not the domain name registrants made any representation to the registrar regarding the use of the domain name for SPAM purposes. That discovery could eliminate claims for 60,000 emails on summary judgment.

XMission is also likely to file a second motion for summary judgment—perhaps more if the Court does not limit the number of summary-judgment motions. XMission's motion for partial summary judgment covers only a third of the emails at issue. The interests of judicial economy are served by a consolidated motion for summary judgment at the close of discovery rather than the piecemeal approach of numerous partial motions for summary judgment.

F.  **Alternatively, Adknowledge requests at least a 45-day enlargement of time to respond to XMission's motion for summary judgment.**

If the Court does not grant this Rule 56(d) motion, Adknowledge requests at least 45 additional days to oppose XMission's motion for partial summary judgment after the Court has ruled on this motion. Good cause exists for the extension. XMission's motion covers over 32,000 emails it contends contain misleading header information. Adknowledge needs time to review and investigate the emails. Adknowledge also needs time to review the WHOIS information associated with each of the sender domain names to determine whether the information sufficiently identifies the sender.

## V. CONCLUSION

XMission filed a premature motion for summary judgment. Adknowledge must conduct discovery to evaluate XMission's claims and prepare defenses. Adknowledge requests the Court deny the partial summary-judgment motion without prejudice. If the Court is inclined to consider the partial summary-judgment motion before the close the discovery, Adknowledge requests at least an additional 45 days to respond from the time the Court issues its order on this motion.

Respectfully submitted this 28th day of March, 2016.

SNOW, CHRISTENSEN & MARTINEAU

By:     /s/ Maralyn M. English
         Maralyn M. English
         Jill L. Dunyon
         *Attorneys for Adknowledge, Inc.*

NEWMAN DU WORS LLP

By:     /s/ Derek A. Newman
         Derek A. Newman, *pro hac vice*
         Jason E. Bernstein, *pro hac vice*
         *Attorneys for Adknowledge, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of March, 2016, I electronically filed the foregoing **DEFENDANT ADKNOWLEDGE, INC.'S RULE 56(d) MOTION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service.

    /s/Derek Newman