| | |
|---|---|
| JILL L. DUNYON (5948)<br>MARALYN M. ENGLISH (8468)<br>SNOW, CHRISTENSEN & MARTINEAU<br>10 Exchange Place, Eleventh Floor<br>P.O. Box 45000<br>Salt Lake City, UT 84145<br>(801) 521-9000<br>jld@scmlaw.com<br>*Attorneys for Adknowledge, Inc.* | DEREK A. NEWMAN (pro hac vice)<br>JASON E. BERNSTEIN (pro hac vice)<br>NEWMAN DU WORS LLP<br>100 Wilshire Boulevard,<br>Suite 940<br>Santa Monica, CA 90401<br>(310) 359-8200<br>dn@newmanlaw.com<br>*Attorneys for Adknowledge, Inc.* |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah company,<br><br>    Plaintiff,<br><br>v.<br><br>ADKNOWLEDGE, INC. a Missouri Corporation; DOES 1-40,<br><br>    Defendants. | Case No. 15-277<br><br>**DECLARATION OF JASON E. BERNSTEIN**<br><br>Judge Tena Campbell |

    I, Jason E. Bernstein, being first duly sworn and having personal knowledge of the matters asserted herein, do hereby declare as follows:

    1.    I am an attorney representing Adknowledge, Inc. in this matter and am personally familiar with the facts of the case and the communications between the parties and counsel for the parties.

    2.    XMission claims that Adknowledge is a "procurer" of about 110,000 emails.

3. Adknowledge requested written discovery from XMission relating to its detailed claims of the expenses XMission incurred to purchase computer servers and other equipment, but received only a partial response.

4. XMission never disclosed much of the information provided in support of partial summary judgment until it filed that motion.

5. Adknowledge was unable to conduct additional discovery or prepare for depositions related to XMission's expenses and allegations of harm.

6. On March 9, 2016—before XMission filed its summary-judgment motion—Adknowledge sent a letter to XMission identifying several deficiencies in XMission's discovery responses.

7. After Adknowledge receives the documents responsive to its discovery requests, Adknowledge must depose the relevant witnesses and investigate each of XMission's claims relating to additional server capacity and other equipment purchases that XMission claims were made to combat spam emails.

8. Adknowledge may retain an expert on whether these expenses were actually necessary to combat spam—and whether they were so effective that XMission doesn't actually have the spam problem it claims to have.

9. Adknowledge must investigate this claim by interviewing and/or deposing the third-party senders and domain-name providers.

10. To respond XMission's claims that 32,111 emails contain false "friendly from" and "from" information in the header line, Adknowledge must independently evaluate each of the 32,111 emails or at least a sample.

11. After analyzing the emails, Adknowledge must have the opportunity to investigate whether and how any header lines contained false information.

12. Adknowledge must interview or depose any witnesses responsible for the headers.

13. XMission also claims the senders—third parties known as "publishers"—gave false addresses when the publishers signed up for domain names. In order to verify this claim, Adknowledge must obtain the WHOIS information for each domain used to send the 32,111 addresses and verify the address information for each one.

14. Adknowledge has diligently pursued discovery.

15. Adknowledge could not undertake the substantial effort to review each of these 32,111 emails before XMission moved for partial summary judgment because XMission refused to identify which legal theory applied to which of the over 100,000 emails at issue.

16. Adknowledge intends to retain experts to opine as to the commercial reasonableness of Adknowledge's anti-spam policies, which are designed to ensure compliance with federal and state spam laws.

17. Adknowledge may also obtain testimony from technical and policy experts in the online marketing industry.

18. It is anticipated that they would testify that Adknowledge's compliance practices are the best in the industry, that Adknowledge could not have done better, and that based on those compliance practices Adknowledge did not know and did not consciously avoid knowing that its publishers engaged in a pattern or practice of violating CAN-SPAM.

19. Adknowledge may also retain an expert to survey potential recipients of commercial emails to measure materiality.

20. Adknowledge intends to conduct third-party discovery to determine the scope of these registrars' anti-spam policies.

EXECUTED this 4th day of March, 2016.

/s/ Jason E. Bernstein
Jason E. Bernstein

(\* I certify that I have the signed original of this document which is available for inspection during normal business hours by the Court or a party to this action.

\*Declaration electronically signed, pursuant to U.C.A. § 46-4-201(4) and District Of Utah CM/ECF and E-filing)