IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah company,<br><br>Plaintiff,<br><br>vs.<br><br>ADKNOWLEDGE, INC., a Missouri corporation,<br><br>Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 2:15-cv-277-TC |

Plaintiff XMission, an Internet service provider, has sued Defendant Adknowledge, Inc. for alleged violations of the CAN-SPAM Act, 15 U.S.C. § 7701-7713 (the "Act"). Approximately 110,000 alleged commercial spam emails are the subject of the suit. The case is still in the discovery stage.

XMission has now asked the court to sanction Adknowledge for its conduct during discovery. XMission filed the motion under Rule 37(c) of the Federal Rules of Civil Procedure after Adknowledge announced its intent to use certain evidence to oppose XMission's motion for partial summary judgment.

For the reasons set forth below, the Rule 37 Motion[1] is GRANTED IN PART AND DENIED IN PART.

---

[1] Docket No. 74.

**BACKGROUND**

**Procedural History**

XMission filed this lawsuit against Adknowledge claiming that Adknowledge is liable for millions of dollars in damages as a "procurer" of 32,111 commercial emails sent to XMission with header information that is "materially false or materially misleading" in violation of 15 U.S.C. § 7704(a)(1). Header information contains a "from" line which should not contain generic information that prevents the email recipient from determining the true identity of the sender. But if other information in the header (the "WHOIS" information) identifies the source, then, generally speaking, no violation has occurred. In lay terms, one source defines WHOIS as

> an Internet service that finds information about a domain name or IP address. [For example, www.amazon.com is a domain name.] If you enter a domain name in a WHOIS search engine, it will scour a huge database of domains and return information about the one you entered. This information typically contains the name, address, and phone number of the administrative, billing, and technical contacts of the domain name.

(http://techterms.com/definition/whois.)[2]

---

[2]WHOIS is more specifically defined by The Internet Corporation for Assigned Names and Numbers (ICANN) as:

> An Internet protocol that is used to query databases to obtain information about the registration of a domain name (or IP address). . . . ICANN . . . require[s] registries and registrars to offer an interactive web page and . . . free public access to data on registered names. Such data is commonly referred to as 'WHOIS data,' and includes elements such as the domain registration creation and expiration dates, nameservers, and contact information for the registrant and designated administrative and technical contacts.
>
> WHOIS services are typically used to identify domain holders for business purposes and to identify parties who are able to correct technical problems associated with the registered domain.

XMission alleges violations of two sections of the Act. First, XMission claims the emails use generic "From" names and false or misleading WHOIS information, in violation of 15 U.S.C. § 7704(a)(1). Second, XMission claims that Adknowledge is liable in connection with transmission of commercial emails sent from Internet domain addresses that were obtained with false or misleading registration information, in violation of 15 U.S.C. § 7704(a)(1)(A).

If Adknowledge proves that it did not know and did not consciously avoid knowing that its publishers engaged in a pattern or practice of violating CAN-SPAM, Adknowledge has a complete defense to liability. See 15 U.S.C. §§ 7702(12), 7706(g)(2). Evidence of Adknowledge's anti-spam policies and procedures, as well as evidence obtained from the third-party publishers, is key to establishing a defense.

On March 14, 2016, XMission filed a Motion for Partial Summary Judgment ("MPSJ"),[3] in which it asked the court to find that Adknowledge violated the CAN-SPAM Act and to award statutory damages to XMission. The MPSJ was filed approximately six months before close of fact discovery (currently set for September 5, 2016), seven months before the last day for expert discovery (October 5, 2016), and eight months before the dispositive motion deadline of November 5, 2016.

In response, Adknowledge filed a motion under Rule 56(d) of the Federal Rules of Civil Procedure[4] asking the court to stay briefing and resolution of the MPSJ until Adknowledge has had an opportunity to complete discovery. In its motion, Adknowledge identified sources of

---

https://www.icann.org/resources/pages/glossary-2014-02-03-en#w

[3]Docket No. 53.

[4]Docket No. 63.

information from which it must acquire evidence to meaningfully oppose the MPSJ. Those sources include third-party publishers of the emails, Adknowledge's anti-spam policies and related records,[5] and experts regarding compliance practices in the industry.

After reading Adknowledge's Rule 56(d) Motion,[6] in which Adknowledge listed evidence it anticipates using in its opposition to the MPSJ, XMission filed its Rule 37(c) Motion asking the court to bar Adknowledge from using information identified in the Rule 56(d) motion: Adknowledge's anti-spam policies (including possible expert opinions regarding industry standards about such policies and the effectiveness of Adknowledge's policies) and evidence from third-party email publishers. According to XMission, the evidence Adknowledge anticipates using to oppose the MPSJ (as listed in the Rule 56(d) Motion) is evidence that should have been (but was not) disclosed to XMission under Rule 26 in a timely manner. XMission then asserts that, because of the violation, Adknowledge should not be allowed to use that evidence in its opposition to the MPSJ.

**Discovery History**

On April 21, 2015, XMission filed its complaint against Adknowledge. On April 30, 2015, XMission filed a Motion for Temporary Restraining Order (TRO) and Preliminary Injunction against Adknowledge. Together with the Motion for TRO, XMission submitted the Declaration of Peter Ashdown, in which XMission set out the nature of its claims generally and identified the characteristics of the emails in question.

---

[5]Adknowledge refers to these documents as "compliance documents."

[6]The court has since denied the Rule 56(d) Motion. See June 16, 2016 Minute Entry (Docket No. 109).

In its opposition to the Motion for TRO, Adknowledge described its compliance program, including descriptions of the documents supporting it. Adknowledge specifically noted that it had an "internal compliance policies and procedures guide (the 'Compliance Documentation') and a separate procedure document outlining Adknowledge's advertising/marketing content policies (the 'General Marketing Guidelines')." (Decl. of John J. Herbst ¶ 4, Docket No. 14.)

On July 9, 2015, XMission served its initial disclosures identifying all of its potential witnesses. On July 14, 2015, XMission produced every email at issue in the MPSJ to Adknowledge through electronic transmission.

On July 27, XMission served Adknowledge with its First Set of Discovery Requests. Interrogatory No. 1 and Request for Production (RPD) No. 3 are the relevant requests here.

Interrogatory No. 1 requested that Adknowledge

Identify the Advertiser and the Publisher for each e-mail at issue in this lawsuit. To facilitate a response to this request, XMission provides herewith, in electronic format, a spreadsheet which identifies each e-mail by e-mail ID and provides a space for you to identify the Advertiser and Publisher for each e-mail.

(Interrogatory No. 1 in First Set of Discovery Requests, attached as Ex. C to the Rule 37 Motion, Docket No. 74-3.) The First Set of Discovery Requests requested information available to Adknowledge that would allow XMission to identify the party, the emails associated with that party, the name of the party, and contact information.

Request for Production (RPD) No. 3 requested that Adknowledge

[p]roduce all document[s] related to or memorializing in any way, your practices, policies and procedures of compliance with the CAN-SPAM Act, or any other law, rule and/or regulation governing Commercial E-mail since January 1, 2010 to present.

(RPD No. 3 in First Set of Discovery Requests.)

On September 2, 2015, Adknowledge responded to XMission's First Set of Discovery Responses. Regarding Interrogatory No. 1, Adknowledge's response identified 86 publishers, but did not provide any information upon which XMission could rely to identify and locate the publishers so that XMission could name them as parties to the lawsuit and serve them with process. (See Responses to First Set of Discovery Requests at 6, attached as Ex. D to the Rule 37 Motion, Docket No. 74-4.) Regarding RPD No. 3, Adknowledge responded that the request was overbroad and "seeks information not relevant to XMission's claims and is therefore not reasonably calculated to lead to the discovery of admissible evidence." (See id. at 10.) But Adknowledge also stated that it would produce all non-privileged documents responsive to the request. (See id. at 9-10.) Specifically, it stated that it would "undertake a reasonable effort [to] produce non-privileged responsive documents to this Request that are in its possession, custody or control subject to the Protective Order automatically in place in this case pursuant to Local Rule 26-2." (Id. at 10.)

On September 11, 2015, two months after the deadline for Rule 26(a) initial disclosures, Adknowledge served its Initial Disclosures. (See Adknowledge Initial Disclosures, attached as Ex. E to the Rule 37 Motion, Docket No. 74-5.) In its Initial Disclosures, Adknowledge did not identify any third-party publisher as a potential witness and did not include the production of any anti-spam policies or procedures. But Adknowledge disclosed the name of its Compliance Manager, Jessie Sight, who could

> testify to any matter related to Adknowledge's compliance practices, programs, policies, and procedures, including how Adknowledge responds to complaints.

(Id. at Part I.6.) Also, Adknowledge noted that internal policies, procedures, and manuals and

6

internal databases and associated data and metadata were available. (Id. at II.9 to II.10.)

On September 14, 2015, XMission sent a meet and confer letter to Adknowledge identifying the deficiency in Adknowledge's Responses to the First Set of Discovery Requests and its Initial Disclosures. In the letter, XMission wrote that "Adknowledge failed to provide any information upon which XMission may rely to actually identify and locate the publishers and advertisers sufficient to name them as a party to the lawsuit and serve them with process." (Sept. 14, 2015 Meet & Confer Ltr. at 3, attached as Ex. F to the Rule 37 Motion, Docket No. 74-6.) Further, XMission expressed its need for that information

> so that it may conduct discovery as to each and investigate Adknowledge's claim that it did not initiate or "procure" the messages. At the very least, each publisher and advertiser is a witness in this case with information material to the claims and defenses and should have been identified in Adknowledge's Rule 26 Initial Disclosures.

(Id. at 4.) As for RPD No. 3, XMission simply wrote that

> you have indicated that you will produce responsive documents. We expect a complete response and production to these requests within five business days of this letter or we will file a motion to compel.

(Id.) In the September 2015 Meet and Confer Letter, XMission did not specifically mention anti-spam policies. But XMission raised concerns with Adknowledge over the telephone about Adknowledge's failure to produce its anti-spam policies. (Second Decl. of J. Cameron ¶¶ 3-4, Docket No. 97.) And the Meet and Confer Letter was a follow-up to that phone call. (Id.)

On October 6, 2015, counsel for XMission, in anticipation of a supplemental response from Adknowledge, sent an email to counsel for Adknowledge:

> I need the signed verification, document production and supplemental responses by end of week. Adknowledge has had ample time to respond. If I do not receive them, I will file a Motion to Compel.

7

(Email chain at 2, Ex. H attached to Rule 37 Motion, Docket No. 74-8.)

On October 9, 2015, in a reply to counsel for XMission, counsel for Adknowledge transmitted a Supplemental Response to XMission's First Set of Discovery Requests and also provided some documents via electronic transmission. (See id. at 1; Adknowledge's Supplemental Response, Ex. G attached to Rule 37 Motion, Docket No. 74-7.) Adknowledge's counsel also wrote,

> I will have more sets of documents coming at an increasing pace next week.

(Id.)

As part of its Supplemental Response, Adknowledge provided a copy of each of its publisher agreements, but all contact information was redacted. Adknowledge says that it

> initially redacted the contact information for the publishers because Adknowledge has both ongoing business relationships with those publishers and confidentiality agreements with some of them, and needed to investigate whether Adknowledge could properly provide private addresses without notifying the publishers in advance.

(Decl. of Jason E. Bernstein ¶ 3, Docket No. 92.) The supplemental response and production did not include any anti-spam policies or procedures.

On October 12, 2015, XMission notified Adknowledge that the production was still deficient and that it would need to file a Motion to Compel. (Oct. 12, 2015 Email from J. Cameron to J. Bernstein, attached as Ex. J to the Rule 37 Motion, Docket No. 74-10.) That day, Adknowledge responded:

> Absolutely I understand. <u>I will continue to provide you links to download additional materials in the meantime.</u> I'm assuming, for now, that the motion will relate to items we simply haven't been able to agree upon rather than items that we have agreed upon but that I'm still preparing for you.

(Oct. 12, 2015 Email from J. Bernstein to J. Cameron (emphasis added), attached as Ex. J to the Rule 37 Motion, Docket No. 74-10.)

On November 2, 2015, XMission filed a Motion to Compel in which it asked the court to compel Adknowledge to disclose third-party publisher contact information. (See Mot. to Compel, Docket No. 36.) But XMission did not include a motion to compel the production of Adknowledge's anti-spam policies because counsel relied on Adknowledge's representation that it would continue its document production. (See Rule 37 Motion at 5; Exs. G-J attached to Rule 37 Motion; Mot. to Compel at 6 n.1.)

Adknowledge did not supplement its response to RPD No. 3 regarding its anti-spam policies until March 15, 2016, eight months after XMission served its First Set of Discovery Requests. At the same time, Adknowledge finally produced the unredacted Publisher Agreements that were the subject of the Motion to Compel. That production occurred right before the hearing on the Motion to Compel (see Apr. 26, 2016 Ruling & Order ¶ 1 (following oral ruling on March 15, 2016), Docket No. 83), and one day after XMission filed its MPSJ.

Although XMission now has at least a portion of the information it requested, it alleges that the late disclosure, as well as other failures to disclose, warrant exclusion of the evidence from any opposition to the MPSJ.

**ANALYSIS**

XMission asserts that Rule 37(c) requires the court to exclude evidence from third-party publisher witnesses and evidence related to Adknowledge's anti-spam policies because Adknowledge's violation of subsections (a) and (e) of Rule 26 was not substantially justified or harmless. Adknowledge responds that no violation occurred and that Rule 37(c) does not apply,

9

but even if it did, exclusion of the evidence is too harsh a sanction because excluding evidence so central to Adknowledge's defense would be tantamount to granting a directed verdict in XMission's favor.

For the reasons set forth below, the court finds that Adknowledge has violated subsections (a) and (e) of Rule 26, that the violations were not substantially justified or harmless, but that excluding the evidence is not appropriate under the circumstances. Instead, the court awards XMission attorney's fees and costs associated with the Rule 37 Motion. In addition, to lessen the prejudice to XMission, the court sets an extended briefing period for XMission and provides XMission additional leeway (described below) when filing its reply in response to Adknowledge's opposition.

**A.    Rule 37(c) Applies Because Adknowledge Violated Rules 26(a) and 26(e).**

Rule 37(c) applies when a failure to disclose or supplement violates Rule 26(a) or Rule 26(e). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added).

Rule 26(a) of the discovery rules requires that at the beginning of a lawsuit, a party, "without awaiting a discovery request," must disclose certain information to the other parties, including:

> (i)    the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;

> > [and]
>
> > (ii) a copy—<u>or a description by category and location</u>—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . . .

Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii) (emphasis added).

After the party has provided its initial disclosures, Rule 26(e) requires that party to supplement its initial disclosures or responses to discovery requests in a timely manner:

> **(1)** *In General.* A party who has made a <u>disclosure under Rule 26(a)</u>—or <u>who has responded to an interrogatory, request for production</u>, or request for admission—<u>must supplement or correct</u> its disclosure or response:
>
> > (A) <u>in a timely manner</u> if the party learns that in some material respect the disclosure or response is <u>incomplete or incorrect</u>, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; . . . .

Fed. R. Civ. P. 26(e)(1)(A) (emphasis added).

XMission contends that Adknowledge failed to disclose potential witnesses associated with the third-party publishers and failed to produce its anti-spam policies.

### 1. Anti-Spam Policies

XMission requested the anti-spam policies in RPD No. 3. Adknowledge responded in generic language that it would "undertake a reasonable effort [to] produce non-privileged responsive documents to this Request that are in its possession, custody or control subject to the Protective Order automatically in place in this case pursuant to Local Rule 26-2." (Adknowledge's Responses to First Set of Discovery Requests at 10, Ex. D attached to Rule 37 Motion, Docket No. 74-4.) It did not attach any documents to the response. In fact,

11

Adknowledge did not produce documents setting forth its anti-spam policies and procedures until March 15, 2016, one day after XMission electronically filed its MPSJ. That, says XMission, violated Rule 26(e), which requires timely supplementation of earlier discovery responses that are incomplete or incorrect.

Adknowledge contends that it is not subject to Rule 37(c) sanctions for its late production of the anti-spam policies because its actions concerning those policies did not violate Rule 26(a) or Rule 26(e). Accordingly, Rule 37(c) (which only applies to Rule 26(a) and Rule 26(e)) does not provide a legal basis for the remedy XMission seeks. Adknowledge further maintains that even if it did violate a discovery rule, XMission was required to file a motion to compel to trigger the sanction process under Rule 37.

Although XMission did not file a motion to compel the anti-spam policies,[7] XMission asserts that it did not have to do so because, at a minimum, Adknowledge failed to supplement its Initial Disclosures when it failed to produce the anti-spam policies in a timely manner (a violation of Rule 26(e), to which Rule 37 does apply).[8] Adknowledge responds that its Initial Disclosures, which identified the anti-spam policies by category and location, were sufficient and did not need to be supplemented. It then asserts that it was in the process of completely responding to RPD No. 3 and so an obligation to supplement has not arisen when XMission filed its MPSJ.

---

[7]XMission says it did not file a motion to compel because Adknowledge kept saying it would produce the documents. XMission gave Adknowledge the benefit of the doubt, but for whatever reason, Adknowledge stalled in its effort to produce the documents (documents that it had from day one of the suit and which it knew would be relevant to its defense).

[8]Rule 37(c) does not require filing of a motion to compel.

Although Adknowledge was in the process of fulling responding to RPD No. 3, Adknowledge initially responded to RPD No. 3 in generic language. Its evasive response[9] was incomplete (no documents were specifically identified in the response, much less attached); that "response" required supplementation to satisfy the discovery rule requirements. At a minimum, the obligation to supplement should have become apparent to Adknowledge when the parties' subsequent communications[10] clearly indicated that XMission was seeking, at a minimum, the written anti-spam policies in effect during the time the commercial emails were sent.

Although Adknowledge eventually produced responsive documents, its production came eight months after XMission served RPD No. 3. Adknowledge provides no explanation for why it waited so long to produce documents that it knew, from the outset of this case, would be central to its defense and that it said, in its response to RPD No. 3, it would "undertake" to produce. By waiting eight months, Adknowledge failed to respond in a timely manner, which is a violation of Rule 26(e)(1)(A).

### 2. Evidence From Third-Party Publisher Witnesses

Nowhere in Adknowledge's September 2015 Initial Disclosures does it list any potential witness associated with third-party email publishers. And even after XMission submitted its Interrogatory No. 1, Adknowledge did not provide that information in a timely manner. Indeed, XMission had to file a motion to compel to obtain that information. Finally, on the eve of the

---

[9]See Fed. R. Civ. P. 37(a)(4) ("For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.").

[10]After XMission served RPD No. 3, it repeatedly contacted Adknowledge (both over the phone and in writing) in an attempt to get the documents that Adknowledge said it would produce.

hearing on the motion to compel, Adknowledge disclosed the information. Regardless of the motion to compel and Interrogatory No. 1, Adknowledge's failure to disclose the information in the Initial Disclosures was a clear violation of Rule 26(a), which requires a party to promptly disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i).

**B.     Sanctions Under Rule 37(c)**

Although the court has determined that Adknowledge violated Rules 26(a) and 26(e), it must determine whether Adknowledge's failure to comply was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). If the answer is no, the court may impose a sanction. The primary sanction is exclusion of the evidence that the party failed to disclose in a timely manner. Id. But alternative sanctions may be imposed. Under Rule 37,

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A)     may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> . . .
> (C)     may impose other appropriate sanctions . . . .

Id. (emphasis added).

"'The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court.'" Woodworker's Supply, Inc. v. Principal Mut. Life

14

Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) (quoting Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996)). Although the court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose," the court should consider four factors: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such evidence would disrupt the proceedings; and (4) the non-disclosing party's bad faith or willfulness, if any. Id. at 993.

Considering all of those factors, the court finds that Adknowledge's failure to disclose in a timely manner was not substantially justified. Adknowledge does not provide any explanation for its exceedingly late disclosure of its anti-spam policies and its intention to rely on evidence from third-party publisher witnesses. At best, the record shows unexplained dragging of feet, incomplete responses to clear discovery requests, and a failure to meet express discovery obligations.

Additionally, the harm to XMission is apparent. The production came eight months late. And two weeks after Adknowledge finally disclosed the third-party publisher information and the anti-spam policies (when Adknowledge filed its Rule 56(d) Motion), XMission received the first indication that Adknowledge would rely on that evidence. Given Adknowledge's failure to timely disclose information that it intends to use to oppose XMission's MPSJ, XMission essentially has only two options (absent intervention from the court): (1) withdraw its MPSJ, or (2) attempt to respond to the opposition without a meaningful opportunity to analyze the information and develop its own evidence. Neither is a satisfactory solution.

Adknowledge asserts that XMission would not be prejudiced by delaying consideration of

the MPSJ because the end of discovery is months away and the dispositive motion deadline is even further down the road. But nothing in the discovery rules requires XMission to wait to file a summary judgment motion. In Jama v. City & County of Denver, 304 F.R.D. 289 (D. Colo. 2014), untimely disclosures "resulted in the nullification of [the party's] summary judgment motion" which was "predicated on the [other party's] discovery disclosures then-existing." Id. at 300. The court found that delay in resolution of summary judgment issues was prejudicial. "As the adage goes, 'time is money.'" Id. at 301 n.7. Striking XMission's MPSJ and waiting until the close of discovery (Adknowledge's proposed solution) would unfairly curtail XMission's ability to manage its case as it sees fit; that prejudice is amplified because the reason for delay was caused by Adknowledge's failure to comply with the discovery rules.

Because Adknowledge's actions were neither substantially justified nor harmless, the court will impose a sanction.

XMission insists that the court, upon finding a violation, must exclude the evidence. The court does not agree. Although Rule 37(c) contains seemingly mandatory language ("the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial"[11]), that language is tempered by subsequent language providing that the court may impose an alternative sanction ("In addition to or instead of this sanction"[12]).

According to Adknowledge, its anti-spam policies and practices, as well as information from third-party email publishers, are key to establishing its defense. (See Rule 56(d) Mot. at 6; Def.'s Opp'n to Rule 37 Mot. at 1, Docket No. 91.) Excluding that evidence would severely

---

[11]Fed. R. Civ. P. 37(c)(1) (emphasis added).

[12]Id. (emphasis added).

handicap Adknowledge's ability to respond to the motion on the merits. And courts express a strong preference for deciding cases on the merits rather than on a procedure-based ruling. See Westinghouse Elec. Corp. v. Adams (In re Westinghouse Elec. Corp. Uranium Contracts Litigation), 570 F.2d 899, 902 (10th Cir. 1978) ("The law favors disposition of litigation on its merits.").

XMission contends that exclusion of the evidence is justified by the circumstances, and it cites to other cases as examples of why exclusion is an appropriate sanction here. But those cases are not persuasive; the circumstances were more egregious and prejudicial than the circumstances here. For example, in Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico, 248 F.3d 29 (1st Cir. 2001), the appellate court noted that "[o]n the day scheduled for trial, the [district] court found that plaintiffs had committed serious discovery abuses by withholding information they were required to furnish, including information relative to their proposed expert witness." Id. at 30. In Jama v. City & County of Denver, 304 F.R.D. 289 (D. Colo. 2014), the disclosures occurred after discovery had closed.

In this case, discovery is months from completion. Also, because the MPSJ focuses on only a portion of the case, any order granting the motion would not end the case; discovery and motion practice will continue. And, finally, XMission has had the late-disclosed information for three months (briefing on the Rule 56(d) Motion and the Rule 37 Motion delayed any briefing on the MPSJ), and knows that it will be relevant to XMission's MPSJ. While those facts do not excuse Adknowledge's behavior or prevent a finding that such behavior harmed XMission, they do weigh in favor of a lesser sanction, which the court may impose in lieu of exclusion of evidence.

Rule 37(c) gives the court authority to impose a lesser sanction in the form of attorney's fees and costs. Fed. R. Civ. P. 37(c)(1)(A) (authorizing the court to "order payment of the reasonable expenses, including attorney's fees, caused by the failure[.]"). And that is what the court will impose. Adknowledge's failure created XMission's need to file the Rule 37 Motion concerning both the anti-spam policies and the list of witnesses from third-party publishers. If Adknowledge had produced the information in a timely manner, the need for XMission to file its Rule 37 Motion would not have arisen.

Adknowledge contends that XMission created its own dilemma when it surprised Adknowledge with the motion for partial summary judgment. According to Adknowledge, XMission filed the MPSJ too soon (that is, before discovery is complete and with deadlines months away). But the fact that more time exists in the fact discovery period does not justify Adknowledge's behavior. Under the rules, Adknowledge should have provided the information (all of which was in its custody and control) months and months earlier than it did. XMission should not have to beg and plead and pester to receive information that it has properly requested and that it has every right to receive. Filing the motion for partial summary judgment was XMission's prerogative. And when Adknowledge suddenly announced its intention to rely on evidence that it wrongfully withheld, XMission properly defended itself by filing the Rule 37 Motion.

For the foregoing reasons, the court orders Adknowledge to pay the reasonable attorney's fees and costs that XMission incurred in connection with its filing of the Rule 37 Motion, including time spent at oral argument. The court will refer the matter to the magistrate, where the parties can submit briefs addressing the amount of reasonable attorneys fees and costs.

## ORDER

For the foregoing reasons, XMission's Motion Under Rule 37 to Exclude Evidence From Use in Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment (Docket No. 74) is GRANTED IN PART AND DENIED IN PART as follows:

1. The court will not exclude the evidence targeted by XMission in its Rule 37 Motion. But Adknowledge must pay XMission's reasonable attorney's fees and costs incurred in connection with XMission's filing of and oral argument on the Rule 37 Motion. XMission is to submit a motion for attorneys' fees as soon as practicable. The motion must be accompanied by sworn statement(s) and documentary evidence to support the amount claimed by XMission. That motion will be handled by the magistrate judge assigned to this case.

2. The briefing schedule on the Motion for Partial Summary Judgment (Docket No. 53) is as follows:

    a. Adknowledge's deadline to file an opposition brief to the MPSJ remains the same (i.e., 45 days from June 16, 2016, when the court denied the Rule 56(d) Motion).

    b. XMission may file a reply brief 30 days from the date Adknowledge files its opposition brief. XMission may file an overlength reply to whatever extent necessary to respond to all of the points made in the opposition.

SO ORDERED this 24th day of June, 2016.

BY THE COURT:

TENA CAMPBELL
U.S. District Court Judge