# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| XMISSION, L.C., a Utah company,<br><br>Plaintiff,<br><br>v.<br><br>ADKNOWLEDGE, INC., a Missouri corporation, and DOES 1-40,<br><br>Defendant. | **MEMORANDUM DECISION & ORDER**<br><br>Case No. 2:15-cv-00277<br><br>United States District Court<br>Judge Tena Campbell<br><br>Magistrate Judge Dustin Pead |

On October 20, 2015, Defendant Adknowledge Inc., (Adknowledge) issued its first set of discovery requests to Plaintiff Xmission, L.C., (XMission) including Requests for Admission, Requests for Production of Documents and Interrogatories (ECF No. 100, Bernstein Decl., ¶ 2.)

Interrogatory No. 12 requests XMission to:

> [i]dentify and describe any and all other lawsuits or settlements involving the CAN-SPAM Act, including the date the lawsuit or demand was filed or settled, the defendants or opposing parties, the amount [XMission] received from the defendants or opposing parties, and any injunctive relief, if any, that [XMission] obtained.

(ECF No. 100, Bernstein Decl., ¶3.) Related thereto, Request For Production 9 seeks XMission's production of any and all documents related to Interrogatory 12 (ECF No. 100; Bernstein Decl., ¶ 4.)

On January 5, 2016, XMission filed its objections and responses to Adknowledge's First Set of Discovery Requests, specifically objecting to Interrogatory 12 and the production of

information related to prior settlement agreements with other parties (ECF No. 100-3.)[1] On February 1, 2016, XMission made a supplemental production but failed to produce additional information responsive to Interrogatory 12 and Request For Production 9 (ECF No. 100, Bernstein Decl., ¶ 7.)

Thereafter, on May 25, 2016, Adknowledge filed its pending motion to compel information and documents responsive to its discovery requests regarding XMission's prior CAN-SPAM settlement agreements (ECF No. 99.)[2]

## II. STANDARD OF REVIEW

"The district court has broad discretion over the control of discovery, and [the Tenth Circuit] will not set aside discovery rulings absent an abuse of that discretion." *Sec. & Exch. Comm'n. v. Merrill Scott & Assocs., Ltd.,* 600 F.3d 1261, 1271 (10th Cir. 2010 ) (quotations and citations omitted). The general scope of discovery is governed by rule 26 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(1). The Advisory Committee Notes for the 2000 Amendments to rule 26 direct parties and courts to "focus on the actual claims and defenses involved in the action" in determining relevance for purposes of discovery. *See* Fed. R. Civ. P. 26 Advisory Committee Notes, 2000 Amendments, Subdivision (b)(1).

---

[1] Subject to and without waiving its objections, XMission did identify five lawsuits that it has previously filed under CAN-SPAM, but did not include information on settlement amounts or other settlement terms (ECF No. 100-3.) The lawsuits identified are: XMission v. Thompson and Company (2:15-cv-385), XMission v. Clickbooth.com (2:15-cv-420), XMission v. Credentity Solutions (2:15-cv-534), XMission v. One Technologies (2:15-cv-578) and XMission v. Flex Marketing Group et. al. (2:15-cv-590.)

[2] On April 6, 2016, the parties met and conferred regarding discovery deficiencies but were unable to resolve the dispute (ECF No. 100, Bernstein Decl., ¶ 10.)

On December 1, 2015, Rule 26(b)(1) was amended to state as follows:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Pursuant to Federal Rule of Civil Procedure 37, a party may move for an order compelling disclosure or discovery if a party fails to adequately answer an interrogatory or respond to a request for production. Fed. R. Civ. P. 37(a); DUCivR 37-1.

### III. ADKNOWLEDGE'S MOTION TO COMPEL

Adknowledge advances two main arguments in support of its motion to compel information on XMission's prior settlement agreements with third parties under CAN-SPAM: standing and damages. The court addresses each of these arguments in turn.

**Standing**[3]

XMission's standing to pursue litigation is not before the court. Rather, the issue of standing is squarely before the District Court as raised in XMission's motion for partial summary judgment (ECF NO. 53; *see also* ECF No. 116.)[4] Instead, the limited issue before this court is the

---

[3]Case law on CAN-SPAM is limited and "few courts have construed the [Act's] standing provision[ ]" *Gordon v. Virtumundo,* 575 F.3d 1040, 1049 (9th Cir. 2009) (*citing ASIS Internet Servs. v. Active Response Group, No. 07-6211,* 2008 U.S. Dist. LEXIS 60535 (N.D. Cal. July 30, 2008.)

[4]Additionally, the issue of whether Adknowledge previously conceded that XMission has standing as a legitimate Internet access server is not before this court, and the court makes no findings or legal conclusions related thereto.

relevance, for purposes of discovery, of XMission's settlement agreements.

Standing under CAN-SPAM[5] requires a determination of two issues: (1) whether XMission is a bona fide "Internet access service"[6] and (2) whether XMission was adversely affected by CAN-SPAM violations. *See* 15 U.S.C. § 7706 (a), (b), (f), (g)(1). Adknowledge asserts settlement agreements are relevant to determine XMission's standing as a bona fide internet service provider as opposed to a "litigation factory" that is "collecting allegedly spam emails through an ISP and then using those emails to manufacture legal claims, rather than trying to deal with a legitimate spam problem." (ECF No. 118, p. 8.); *see also Gordon v. Virtumundo,* 575 F.3d 1040, 1052 (9th Cir. 2009) (court "troubled" by Plaintiff who accumulates "spam through a variety of means for the purpose of facilitating litigation."). The court disagrees.

In the cases relied upon by Adknowledge the court was presented with genuine concerns about Plaintiff's status as a legitimate Internet Service Provider (ISP) necessitating an examination of additional evidence. For example, in *Gordon v. Virtumundo, Inc.,* the admitted

---

[5]The CAN-SPAM Act became effective on January 1, 2004. 15 U. S.C. § 7701 *et seq.* Its enforcement provisions empower the Federal Trade Commission and other federal agencies to pursue alleged violators. 15 U.S.C. § 7706(a), (b). In addition, Congress provided a limited private right of action to a "provider of Internet service [that is] adversely affected by a violation of § § 7704(a)(1), 7704(b), or 7704(d) or a pattern or practice that violates § 7704(a) (2), (3), (4), or (5)." *Gordon v. Virtumundo, Inc.,* 2007 U.S. Dist. LEXIS 35544 *8 (W.D. Wash. May 15, 2007) (internal citation and quotation omitted).

[6]Under the Act, an "Internet access service" is defined by as:
> a service that enables users to access content, information, electronic mail, or other services offered over the Internet, and may also include access to proprietary content, information, and other services as part of a package of services offered to consumers. Such term does not include telecommunications services.

15 U.S.C. § 7702 (11) (*citing,* Communications Act, 47 U.S.C. 231 (e)(4)).

"professional Plaintiff" was the registrant of a domain name hosted on a leased server space with a "nominal role in providing Internet related services" and a failure "to operate as a *bona fide* e-mail provider." 575 F.3d 1040, 1052 (9th Cir. 2009) (finding Plaintiff lacked standing to bring a private action for CAN-SPAM because no real harm was suffered and Plaintiff did "not fit any reasonable definition of an 'Internet access service'").[7] Moreover, *Gordon* provides no support for the claim that a Plaintiff's settlement agreements with third parties are relevant to a determination of status as a legitimate service provider or establishing adverse effect. *Id.* And, although the court in *Beyond Systems, Inc. v. Kraft Foods, Inc.,* compelled disclosure of aggregate information, not amounts of particular settlements, it did so only in the context of a prolific Plaintiff whose principal activity was to capture and collect spam for purposes of litigation. 972 F. Supp. 2d 748, 753 (D. Md. 2013) (ECF No. 106-2.)

Such is not the case here and the court concludes that Adknowledge's call for access to confidential settlement agreements between XMission and unrelated third parties is disproportionate to the needs of the case. There is no indication that XMission's primary purpose is to "proactively attract and trap potential spam" and XMission provides evidence showing that it continues to be adversely affected and incur costs in its efforts to address SPAM related issues. *Beyond Systems Inc.* 972 F. Supp. 2d at 752; (ECF No. 54, Ashdown Decl., ¶¶ 16-22.)

---

[7] In *Gordon v. Virtumundo*, the court indicates that harm for a legitimate service provider might be presumed "because any reasonable person would agree that such entities dedicate considerable resources to and incur significant financial costs in dealing with spam." *Gordan* 575 F.3d at 1055 (*citing*, S. Rep. No. 108-102, at 203 (recounting reports by America Online, Microsoft, and Earthlink regarding the effects of increasing volumes of spam.)

**Damages**

Under CAN-SPAM, a Plaintiff may elect to recover monetary damages in an amount equal to the greater of actual losses or statutory damages. 15 U.S.C. § 7706(g)(1)(B). It is well established that "[t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified [statutory] maxima and minima." *Harris v. Emus Records Corp.,* 734 F.2d 1329, 1335 (9th Cir. 1984).

Adknowledge asserts settlement agreements are relevant to the court's calculation of statutory damages and therefore discoverable. Specifically, Adknowledge contends XMission's recovery of spam-related costs, as evidenced through prior settlement agreements, must be equitably balanced with any statutory damages imposed by the court. In *Tagged Inc. v. Does 1 Through 10,* the case relied upon by Adknowledge in support of its offset theory, the court declined to award the $100 maximum statutory damages under CAN-SPAM, instead awarding Plaintiff $25 per violation. 2010 U.S. Dist. LEXIS 5428 *32 (N.D. Cal. January 25, 2010). In doing so, the *Tagged* court made no reference to prior settlement agreements only indicating that "*some courts* have looked to estimates of actual damages" when calculating statutory damages. *Id* (emphasis added) (*citing, Sara Lee Corp. v. Bags of New York, Inc.,* 36 F. Supp. 2d 161, 170 (S.D. N.Y. 1999) (calculating statutory damages in a trademark infringement case.)

Upon consideration, the court finds Adknowledge's reliance upon *Tagged* to support the relevance of XMission's confidential settlement agreements is misplaced. Further, if the District Court is somehow persuaded that XMission's settlement agreements with third parties are relevant to offset damages, it could compel disclosure of that information in conjunction with, and at the time of, its statutory damage calculations, if any.

## IV. ORDER

Reviewing Adknowledge's motion through the lens of Federal Rule 26, the court concludes, for the reasons set forth herein, that compelling disclosure of XMission's confidential settlement agreements involving unrelated third parties is disproportionate to the needs of this case. Specifically, the requested discovery is not proportional "considering the importance of the issues at stake in the action, . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Accordingly, Adknowledge's Motion To Compel and Request For Attorney Fees is DENIED (ECF No. 99.)

Dated this 8th day of July, 2016

_____
Dustin B. Pead
U.S. Magistrate Judge